

OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

JOHN CORNYN

October 13, 1999

The Honorable Riley J. Simpson
District Attorney
52d Judicial District
Coryell County
P.O. Box 919
Gatesville, Texas 76528-0919

Opinion No. JC-0127

Re: Whether proceeds of bonds approved by voters to construct a public improvement project may be used for legal fees for arbitration of a contract related to the construction (RQ-0051-JC)

Dear Mr. Simpson:

You ask whether the proceeds of bonds approved by voters to construct a public improvement project may be used for legal fees relating to arbitration of a contract for construction of that project. We conclude that the proceeds may be used to pay the arbitration legal fees if arbitration is a reasonably necessary step toward constructing the project.

The circumstances prompting your request, as we understand them, are as follows: In accordance with articles 701 through 705 of the Revised Civil Statutes,[1] the residents of the City of Copperas Cove (the "City") approved the issuance of $1,500,000 in bonds "for the purpose of constructing permanent improvements by constructing, expanding and extending the fire/EMS Department station and substation in said City, and related improvements . . . ." *See* Copperas Cove, Tex., An Ordinance Calling for and Ordering an Election for May 7, 1994 on the Question of the Issuance of Bonds (Feb. 15, 1994) [hereinafter "Election Ordinance"]. These bonds, payable from ad valorem taxes levied on all taxable property in the City, were subsequently issued and sold by the City for that purpose. *See* Copperas Cove, Tex., Ordinance Authorizing Issuance of City of Copperas Cove, Texas General Obligation Bonds, Series 1994 (Aug. 9, 1994). After construction on the fire station commenced, the City and the construction management firm for the project had several disputes that were ultimately settled through arbitration procedures set forth in the construction management contract. Although the fire station was never completed, $350,000 of the bond proceeds—approximately twenty-three percent of the bonds' principal amount—was expended for legal fees for the arbitration. Because the City's residents have questioned the expenditure of the bond proceeds for the arbitration costs, you ask: "Can general obligation bond proceeds be used to

---

[1]Articles 701 through 842a of the Texas Revised Civil Statutes were repealed and recodified, without substantive change, by the 76th Legislature at Title 9 of the Texas Government Code. *See* Act of May 10, 1999, 76th Leg., R.S., ch. 227, §§ 1, 28(a), 29(a), 1999 Tex. Sess. Law Serv. 721, 775-76, 1056 (to be codified at TEX. GOV'T CODE ANN. tit. 9). For ease of citation, this opinion will refer to the provisions of the law as they will be codified in the Texas Government Code.

finance expenses to defend or pursue arbitration of construction . . . that result from the purposes for which the general obligation bond was originally issued?" *See* Letter from Honorable Riley J. Simpson, District Attorney, 52d Judicial District, Coryell County, to Office of the Attorney General (Mar. 25, 1999) (on file with Opinion Committee).

We find no statute setting forth specific costs that may be paid with bond proceeds. Chapter 1251 of the Government Code, under which the City's bonds were issued, authorizes a city to issue bonds for public improvements payable from ad valorem property taxes levied on all taxable property in the city (general obligation bonds), subject to voter approval. *See* TEX. GOV'T CODE ANN. §§ 1251.001-.005 (bond elections), 1331.001 (municipal authority to issue bonds). Chapter 1251 does not list specific costs that a city may pay with proceeds of authorized bonds. *See id.* Nor are we aware of any other statute applicable to the City's bonds that does.

Proceeds of the bonds in the situation about which you ask must be used for construction, expansion, and extension of the fire/EMS station and substation "and related improvements." Election Ordinance, *supra.* Where the electorate has approved the issuance of bonds, bond proceeds may be expended only for the purposes for which the bonds were approved. *Troy Dodson Constr. Co. v. McClelland,* 993 F.2d 1211, 1216 (5th Cir. 1993); *Barrington v. Cokinos,* 338 S.W.2d 133, 142 (Tex. 1960); *Lewis v. City of Fort Worth,* 89 S.W.2d 975, 978 (Tex. 1936); *Black v. Strength,* 246 S.W. 79, 80 (Tex. 1922); *Moore v. Coffman,* 200 S.W. 374, 375 (Tex. 1918). *See generally* 60 TEX. JUR. 3d *Public Securities and Obligations* § 77 (1988). A city is required to include in the bond proposition in the election ordinance and in the notice of election the purposes for which bonds payable from ad valorem property taxes will be issued because the electorate is entitled to know in advance the particular purpose for which its taxes levied pursuant to the election will be used. *See* TEX. GOV'T CODE ANN. §§ 1251.002-.004; *Moore,* 200 S.W. at 374. The ordinance calling the bond election and establishing the purposes for which bonds will be issued becomes a contract with the voters once the voters approve the bonds. *Black,* 246 S.W. at 80-81; *Moore,* 200 S.W. at 374; *Devorsky v. La Vega Indep. Sch. Dist.,* 635 S.W.2d 904, 908 (Tex. App.–Waco 1982, no writ); *Inverness Forest Improvement Dist. v. Hardy Street Investors,* 541 S.W.2d 454, 460 (Tex. Civ. App.–Houston [1st Dist.] 1976, writ ref'd n.r.e.). Thus, the issue presented in this opinion is whether the legal fees, while not for the actual construction of the project, are nonetheless a cost of the project and, therefore, within the scope of the purpose for which the bonds were approved.

Bond proceeds may be used, without specific voter approval or statutory authorization, for certain nonconstruction costs. Proceeds may, for instance, be used to pay reasonable expenses incident to issuing bonds, such as legal and other professional fees, and printing and advertising expenses, without specific voter approval and even when they are not statutorily authorized. *See* 15 EUGENE MCQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 43.68, at 731 (3d ed. 1995); 3 M. DAVID GELFAND, STATE & LOCAL GOVERNMENT DEBT FINANCING §§ 11.26.50, 11.39-.42 (1992 & Supp. 1994). Legal fees for arbitration of a construction contract are not costs incident to the issuance of bonds, and we have found no case in Texas or another jurisdiction that addresses the use of bond proceeds to pay arbitration or litigation expenses related to the construction of a project.

We have two concerns, grounded in the proposition that proceeds of bonds may be used only for the purposes for which the voters approved the bonds, about concluding that the City's bond proceeds may be used to pay arbitration expenses related to the approved public improvement. First, when such an expenditure is neither judicially recognized nor legislatively authorized, it is difficult to conclude that the voters contemplated and, thus, approved the expenditure of bond proceeds for that purpose. *See Fletcher v. Ely*, 53 S.W.2d 817, 818-19 (Tex. Civ. App.–Amarillo 1932, writ ref'd) (intent of parties to bond election, as in all contracts, is "dominant ruling factor" in determining approved bond purposes); Tex. Att'y Gen. Op. No. H-968 (1977) at 3 (voters of Harris County could not have contemplated proposed construction of toll facility in approving bonds for acquisition of right-of-way). Even though the voters do not specifically approve judicially recognized or statutorily authorized nonconstruction costs, the voters are presumably on notice, as a matter of law, that the proceeds may be used for those purposes. *Cf. San Antonio River Auth. v. Shepherd*, 299 S.W.2d 920, 924-25 (Tex. 1957) (voters' statutory right to repeal or reduce tax must be construed in harmony with county's implied authority to contract its general credit for flood control purposes); *San Saba County v. McCraw*, 108 S.W.2d 200, 203 (Tex. 1937) (laws in force and effect on election date become part of voted proposition and part of contract with voters). Whether the voters may be presumed to know or contemplate that bond proceeds will be used for more indirect, nonconstruction arbitration expenses that are neither judicially recognized nor statutorily authorized is a more tenuous proposition.

Second, using proceeds for nonconstruction purposes reduces the funds available to construct the project that the voters specifically approved. Unlike the recognized and expected nonconstruction costs such as issuance costs that may be taken into account in sizing the principal amount of the bonds to be issued, unexpected and unrecognized expenses such as arbitration costs are unlikely to have been taken into account. Expending bond proceeds for these unexpected costs may result in insufficient or no funds remaining to construct the project actually approved by the voters. Even if the project is never constructed, the voters remain obligated to pay the ad valorem taxes levied on their property to support those bonds until they are retired.

Nevertheless, we are ultimately unpersuaded that legal fees for arbitration of a construction contract never may be paid from the proceeds of bonds approved for the related project. When a city submits to the voters a bond proposition stating in general terms the purposes for which the bonds will be issued, the city's governing body retains the discretion to determine the particular items for which bond proceeds will be spent to effectuate that purpose. *Barrington*, 338 S.W.2d at 142-43. If the expenditure is for "one step being taken by the city to effectuate" the purposes for which bonds were authorized, it cannot "be said as a matter of law that the same is foreign to such purposes." *Id.* at 143. Accordingly, we cannot conclude, as a matter of law, that the arbitration fees are not a reasonably necessary cost of constructing the project.

The voters in *Barrington* had approved issuance of bonds for the purpose of, among other things, "'paying part of the cost of the project for the elimination of railroad grade crossings from the public streets and highways in the City of Beaumont, and work and expenses incident to such separation of grades.'" *Id.* at 136 (quoting Bond Election Proposal (Aug. 12, 1950)). The Texas

Supreme Court upheld the City of Beaumont's use of the bond proceeds to remove a span of railroad track from its present location to another and to provide a new railroad right-of-way to a railroad company, relying on the principle that when the law entrusts to the governing body the duty to exercise its sound judgment and discretion, courts may not interfere if the governing body acts lawfully. *Id.* at 142-43 (citing *Lewis*, 89 S.W.2d at 978). The court noted that at the time of the bond election, the city had no definite plans to effectuate the improvements; therefore, neither the city nor the voters could know the particular items for which the bond proceeds would be spent:

> Evidently it was for this reason that the proposal was submitted in rather general terms, and approval of the same by the electorate necessarily left to the sound judgment and discretion of the governing body the devising of a program or plan for the elimination of grade crossings which would be advantageous to the municipality and its citizens.

*Id.* at 143. Although the "question is not entirely free from doubt," the court "concluded that the city's undertakings under the contract are not outside the scope of the bond proposition approved by the electorate . . . ." *Id.* at 142.

We believe *Barrington*'s rationale applies here, even though *Barrington* deals with expending bond proceeds for specific improvements encompassed within the voter approved projects rather than expending bond proceeds for particular nonconstruction cost *relating* to an approved project at issue here. Like the bond proposition in *Barrington*, voter approval of a project in general terms in this instance—construction of a capital improvement project—leaves open the particular items for which bond proceeds will be spent to achieve that purpose. Obviously, a number of steps are necessary to completing a construction project that do not involve the physical construction of the project, such as finding a site, obtaining architectural and engineering plans, awarding and reviewing contracts, and ensuring compliance with relevant building requirements and specifications. Although more extraordinary, arbitration also may be a similarly necessary step. For instance, when a city is required by contract or otherwise to arbitrate disputes before proceeding with construction, arbitration may be a necessary step to completing the project; without arbitration, there may be no project. If arbitration is reasonably necessary to effectuate construction of the project, then legal fees for the arbitration are reasonably necessary to the construction of the project.

Whether arbitration is a reasonably necessary step to achieve construction of a particular public improvement project is a determination that depends on facts, such as the contract terms governing the parties; the alternatives to arbitration; the likelihood that the arbitration will result in completion of the project; the sources of funds, other than bond funds, available to the issuer for arbitration costs; the amount necessary to construct the project and the available bond proceeds for that purpose; and the amount of the arbitration costs. Consequently, that determination is beyond the scope of the opinion process. *See, e.g.*, Tex. Att'y Gen. Op. Nos. JC-0020 (1999) at 2 (investigation and resolution of fact questions cannot be done in opinion process); DM-383 (1996) at 2 (questions of fact are inappropriate for opinion process); DM-98 (1992) at 3 (questions of fact cannot be resolved

in opinion process); H-56 (1973) at 3 (improper for Attorney General to pass judgment on matter that would be question for jury determination); M-187 (1968) at 3 (Attorney General cannot make factual findings). Rather, as *Barrington* suggests, it is generally a determination to be made by the bond issuer's governing body in the first instance, subject to judicial review for abuse of discretion. *See Barrington*, 142 S.W.2d at 142 (if governing body acts illegally, unreasonably, or arbitrarily, a court may so adjudge).

### S U M M A R Y

Proceeds of bonds approved by voters to construct a public improvement project may be used to pay legal fees for arbitration of a contract relating to construction of that project if the arbitration is a reasonably necessary step to effectuate construction of the project. Whether arbitration is a reasonably necessary step toward construction of an approved project in a particular instance is a determination to be made by the governing body of the bond issuer, subject to judicial review.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Sheela Rai
Assistant Attorney General - Opinion Committee